**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

YING T.,

Petitioners,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; DAVID VENTURELLA, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; DAVID EASTERWOOD, in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY,

Respondents.

Case No. 26-CV-3860 (NEB/EMB)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ying T. was ordered removed to Thailand, and Respondents want to remove him to Laos instead—without giving him an opportunity to present his claim that he has a credible fear of removal there. Due process requires notice and an opportunity to be heard on his fear-based claim, so the Court grants the Petition for Writ of Habeas Corpus. (ECF No. 1 ("Pet."))

## BACKGROUND

Ying T. entered the United States as a refugee in 2004 and became a lawful permanent resident about three years later, in 2007. (Pet. ¶ 1; ECF No. 11 ¶ 4).[1] The Department of Homeland Security (DHS) initiated removal proceedings against Ying T. on January 3, 2026, by issuing a Notice to Appear Form I-862 based on his criminal history. (Pet. ¶ 47; ECF No. 11 ¶ 5–7.) An immigration judge ordered him removed on March 12, 2026. (ECF No. 11-5 at 1–4.) The immigration judge designated Thailand as the country of removal; he and did not designate any other country in the alternative. (*Id.* at 3.)

DHS informed Ying T. of his impending removal to Laos around September 1, 2026, and scheduled him for a removal flight departing the week of September 7–11, 2026. (Pet. ¶ 49; ECF No. 11 ¶ 14, 16.) Also on September 1, Ying T. filed a Petition for Writ of Habeas Corpus seeking an order enjoining his removal to a third country without an opportunity to present his fear-based claims. On September 2, the Court ordered briefing and, to ensure that Ying T. had access to counsel, prohibited Respondents from transferring Petitioner to another district without at least 24 hours prior notice to the Court and opposing counsel. (ECF No. 3.) On September 1 and 2, Ying T. was booked out of Sherburne County jail and transferred to a detention center in Louisiana—away from

---

[1] Ying T. alleges that he is stateless, (Pet. ¶ 1; ECF No. 12 at 2), while Respondents assert in their briefing that he is a native and citizen of Thailand. (ECF No. 10 at 1). The forms submitted into the record by Respondents contain conflicting information however, with one form listing Laos as his country of citizenship and Thailand as his country of birth, while others identify Thailand as both his country of birth and citizenship. (ECF No. 11-1 at 1–2; ECF No. 11-4 at 1–2). The Court need not resolve this discrepancy because both parties agree that Thailand was the only country designated for removal by the immigration judge. Laos was never designated. (ECF No. 11-5 at 3; Pet. ¶¶ 1, 48, 50; ECF No. 10 at 1.)

his legal counsel – without notifying the Court or Petitioner's counsel. (ECF No. 11 ¶ 15-16.) Ying T. remains in detention in Louisiana pending his removal. (ECF No. 11 ¶ 14-15; Pet. ¶ 1.)[2] [3]

## ANALYSIS

Petitioner's third-party removal claim asserts that the government's plan to remove him to Laos violates his statutory and due process rights because he has been deprived of an opportunity to present any claim that he faces a likelihood of torture or persecution if removed there.

### I. Jurisdiction

The first arguments Respondents make are jurisdictional: First, Respondents assert that the Court cannot review the third-country removal claim because 8 U.S.C. Section 1252 strips the Court's jurisdiction; second, Respondents assert that the Court cannot review the claim because Ying T. is a member of a separately-filed nationwide class

[2] Ying T. also moved for a Temporary Restraining Order (TRO), and the Court granted the motion, enjoining removal until further notice from the Court. (Pet. at 17–18; ECF Nos. 5, 9.) Respondents subsequently moved to dissolve the TRO. (ECF No. 6, 8.) Based on the parties' arguments and because the focus of Respondent's motion to dissolve—the scheduled flight to Laos—has passed, the Court considers Respondents' arguments on dissolution of the TRO and the merits of the petition to have merged, and therefore, finds the motion to dissolve the TRO moot.

[3] Ying T. moved for a second TRO requiring Respondents to disclose his location and abide by the Court's previously granted TRO. (ECF No. 14). Given Respondents' filing providing his whereabouts, (ECF No. 18), and that the Court now reaches the merits of Ying T.'s claim, that motion for a second TRO is also moot.

action, *D.V.D. v. United States Department of Homeland Security*, 821 F. Supp. 3d 102 (D. Mass. 2026).

### *A. 8 U.S.C. Section 1252*

According to Respondents, three provisions of 8 U.S.C. Section 1252 bar review. Section 1252(g) strips jurisdiction over claims by noncitizens "arising from the decision or action by the Attorney General to . . . execute removal orders." Despite this broad language, the Eighth Circuit has made clear that the Court retains jurisdiction over habeas actions presenting a "purely legal question." *Jama v. Immigr. & Nat. Serv.*, 329 F.3d 630, 632 (8th Cir. 2003), *aff'd on other grounds*, 543 U.S. 335 (2005) (resolving the merits without considering Section 1252(g)); *see Silva v. United States*, 866 F.3d 938, 940–41 (8th Cir. 2017) (discussing the *Jama* exception).

Respondents do not argue that *Jama* does not apply, nor do they argue that the case involves questions of fact rather than "purely legal questions." (ECF No. 12.) To the extent that Respondents implicitly argue that this petition falls outside the *Jama* exception, the Court disagrees. Ying T.'s third-country removal claims do not require the Court to delve into the facts of his case or the merits of any underlying fear-based claim; the only relevant fact is that he faces third-country removal. *See, e.g.*, *Folashade O. v. Schilling*, No. 26-CV-2705 (LMP/DTS), 2026 WL 1734877, at *4 n.10 (D. Minn. June 16, 2026).

The relevant question—whether Ying T. has a statutory or constitutional right to be heard on his fear of third-country removal—is a legal question that fits within the exception acknowledged by *Jama*. In *Jama*, the Eighth Circuit considered the petitioner's challenge to the government's construction of a statute, namely whether it was authorized under the INA to remove the petitioner to Somalia without first establishing

that Somalia will accept his return. 329 F.3d at 632. Here, as in *Jama*, Ying T. asks the Court to address whether the INA, FARRA, the CAT, and the Due Process Clause of the Constitution permits Respondents to remove him to Laos without any opportunity or process to present his fear-based claims. Section 1252(g), therefore, does not strip the Court of jurisdiction to decide that question.

Next, Sections 1252(a)(5) and (b)(9), which work together to channel judicial review of immigration proceedings to the court of appeals, do not bar jurisdiction either. Ying T's order of removal designates Thailand as the country of removal and designates no alternative counties of removal. Yet Respondents are trying to send Ying T. to Laos. Ying T. is not asking for review of the final order of removal; he is asking for an opportunity to be heard by Respondents and an immigration judge on his fears of third-country removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 294, 355 (2018) (plurality opinion, joined by two other justices; Breyer, J., dissenting, joined by two other justices). That position is clearly and meaningfully distinguishable from the case relied on heavily by Respondents, *Lang v. Napolitano*, 596 F.3d 426 (8th Cir. 2010). In *Lang*, the Eighth Circuit concluded that Section 1252(g) prevented judicial review when an individual sought to enjoin his removal so that he could challenge his removal order before an immigration judge after failing to appeal his removal order in the first instance. *Id.* at 427-29. The Court, therefore, finds *Lang* inapposite. Section 1252 does not bar jurisdiction. *See Ansumana S., Petitioner, v. Todd Blanche, et al.*, Respondents., No. 26-CV-3371 (KMM/DJF), 2026 WL 2606655, at *10-11 (D. Minn. Sept. 3, 2026)*; Folashade O.*, 2026 WL 1734877, at *4 n.10; *see also Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1005–06 (S.D. Tex. 2025).

***B. D.V.D.***

In *D.V.D.*, the district court granted in part plaintiffs' motion for summary judgment and required the government to provide notice and an opportunity to be heard before third-country removal. *D.V.D.*, 821 F. Supp. 3d at 167–68. The Government appealed that decision, and the First Circuit stayed it pending appeal. *D.V.D. v. Dep't of Homeland Sec.*, No. 26-1212 (1st Cir. Mar. 16, 2026). Since the filing of the petition in this case, the First Circuit issued its opinion affirming in part the district court's decision and upholding the vacatur of DHS's third country removal guidance. *D.V.D. v. Dep't of Homeland Sec.*, --- F.4th ----, 2026 WL 2797801, at *18-20 (1st Cir. Sept. 18, 2026). The First Circuit concluded that by statute, DHS is required to provide effective notice and a meaningful opportunity to assert fear-based claims related to removal to a third country. *Id.* at *15-17.

To the extent that *D.V.D.* or its impact on cases outside the First Circuit is unsettled, Respondents make two arguments. First, Respondents cite the first-to-file rule. But this rule is prudential, discretionary, and yields to the interests of justice. *Nw. Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993); *see Orthmann v. Apple River Campground*, 765 F.2d 119, 121 (8th Cir. 1985). There are good reasons to adjudicate the petition now—while it may take time for the legal effect of the class action's declaratory relief to become clear, Respondents are trying to remove Ying T. to a third country now. If the Court applied the rule and forced Ying T. to wait for further decisions in or about *D.V.D.*, then the government may remove him to Laos, extinguishing any opportunity for relief. *Sagastizado*, 802 F. Supp. 3d at 1008. The interests of justice require that the Court adjudicate Ying T.'s petition now, so the Court will not apply the first-to-file rule.

Second, Respondents assert that Ying T. should not be able to individually litigate his habeas petition because he is a member of the *D.V.D.* class, which does not allow members to opt out. Respondents' strategy is clear: In individual habeas actions, argue that the claims should be adjudicated in the class action. In the class action, argue that the claims should be adjudicated as an individual habeas action. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 730 (W.D. Wash. 2025). As discussed above, the legal effect of *D.V.D.* and the Government's responsive position to it are not yet entirely clear: If the Court adopted Respondents' position, Respondents could remove Ying T. before *D.V.D.* is resolved, foreclosing any relief for alleged violations of his due process rights. *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1072 (W.D. Wash. 2025). The Court considers the merits of Ying T.'s claims.

## II. Merits

Ying T. asserts that Respondents violate the Immigration and Nationality Act (INA), the Foreign Affairs Reform and Restructuring Act (FARRA), and the Due Process Clause by removing him to Laos without an opportunity to invoke protections under the INA, FARRA, or the United Nations Convention Against Torture (CAT).

Last year, DHS changed its third-country removal policy. If a third country has provided diplomatic assurances that people removed to that country would not be persecuted or tortured, a noncitizen may be removed to that country without any procedures or advance notice. Kristi Noem, *Guidance Regarding Third Country Removals* (Mar. 30, 2025). Respondents do not assert that Laos has given such assurances; they state only that the government of Laos provided a travel document for Ying T. (ECF No. 10 at 1; Pet. ¶ 49; ECF No. 11 ¶ 13, 16–17.) There is no evidence that Ying T. has been given an opportunity to adjudicate any fear-based claims regarding removal to Laos.

Respondents address Ying T.'s statutory claims against third country removal, but not the due process claim. Instead, they only briefly assert that his detention pending removal does not violate due process. (ECF No. 10 at 8.) The failure to address a claim alone warrants relief. *Folashade O.*, 2026 WL 1734877, at *4. But relief is also warranted on the merits.

The Due Process Clause requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam).

Courts across the country have found that Respondents' procedures for addressing fear-based claims to third-country removal are unconstitutional. *E.g.*, *Kumar*, 817 F. Supp. 3d at 1069–70; *Sagastizado*, 802 F. Supp. 3d at 1008–13; *see also Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016) (per curiam) ("[L]ast minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."). No one asked Ying T. if he had a fear-based claim. Adjudicating a fear-based claim takes time, yet Respondents provided a mere one-day notice of their intent to remove Ying T. to Laos before transferring him out of state and away from his counsel in preparation for a flight leaving that following week. *See Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). Indeed, despite Ying T. filing this petition the day he was notified he would be removed to Laos, he had already been transferred out of Minnesota by the time the Court issued its first

order the following day. (ECF No. 11 ¶ 14–16; ECF No. 5; Pet. at 19.) Ying T.'s ability to consult with his counsel to make his fear-based claims has been profoundly undermined by the lack of notice given and the speed of Respondents' actions. And the possible consequences of Respondents' actions are severe: Ying T. may be removed to a country where he faces a legitimate fear of torture or persecution.

Applying the *Mathews v. Eldridge* balancing test, the Court must balance "the private interest that will be affected by the official action;…the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and…the Government's interest." 424 U.S. 319, 334-35 (1976). As the court notes in *Ansumana S.*, Ying T. "has a weighty liberty interest in avoiding removal to a country where he is more likely than not to be subject to persecution or torture." 2026 WL 2606655, at *11. And the short notice given to Ying T. about his impending removal to Laos and transfer away from his counsel within 24-hours of that notice provided Ying T. with little—if any—opportunity to raise his fears and creates a high risk of an erroneous deprivation of that interest. *Mathews*, 424 U.S. at 334-35; *see also Ansumana S.*, 2026 WL 2606655, at *12. While the Court recognizes the Government's interest in promptly and efficiently executing removal orders, the impact of the additional procedural protection of allowing Ying T. an opportunity to raise a fear-based claim is minimal—particularly in comparison to the private interests at stake. *Mathews*, 424 U.S. at 334-35. The Court therefore joins the many courts across the country that conclude that Respondents violated Ying T.'s right to due process by trying to remove him without any opportunity to raise a fear-based claim. *Folashade O.*, 2026 WL 1734877, at *5; *Ansumana S.*, 2026 WL 2606655, at *11-13; *Kumar*, 817 F. Supp. 3d at 1069–70; *Sagastizado*, 802 F. Supp. 3d at 1008–13.

The Court next considers the appropriate remedy. Ying T. requests that the Court enjoin his removal until he has had an opportunity to pursue a fear-based claim as to removal to a third country before an immigration judge. (Pet. at 18.) Respondents argue only that reopening immigration proceedings is unnecessary under the applicable statute. (ECF No. 27 ¶ 3.) For the above reasons the Court rejects Respondents position. The Court concludes, consistent with the relief ordered by other courts, that it is appropriate to grant Ying T.'s requested relief. *E.g.*, *Ansumana S.*, 2026 WL 2606655, at *15; *Tamrat v. Blanche*, No. 2:26-CV-01529-GJL, 2026 WL 1871887, at *8 (W.D. Wash. June 30, 2026); *D.J.R.R. v. Genalo*, No. 26-CV-3124 (AMD), 2026 WL 1746716, at *9 (E.D.N.Y. June 17, 2026), *appeal docketed*, No. 26-2306 (2d Cir. Aug. 18, 2026).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED in part:

2. Respondents are ENJOINED FROM removing Petitioner to a third country without notice and a meaningful opportunity to assert a fear-based claim before an immigration judge. Specifically:

   a. Respondents must provide Petitioner with a reasonable fear interview if he states a fear of removal;

   b. If Respondents determine that Petitioner states a reasonable fear of removal to the third country, then Respondents must move to reopen his removal

proceedings for him to present a claim for withholding of removal or deferral of removal under the CAT to an immigration judge;

c. If Respondents determine that Petitioner does not state a reasonable fear of removal to the third country, then Respondents must allow Petitioner 15 days to file a motion to reopen his removal proceedings before removing him; and

3. Respondents Motion to Dissolve Temporary Restraining Order is DENIED.

4. Any remaining claims in the Petition for Writ of Habeas Corpus (ECF No. 1) are DENIED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 29, 2026

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge